UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANASIA SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:25-cv-02677 |
| HARRIS COUNTY; | § | |
| ED GONZALEZ; | § | |
| PAULITA FRANCO; | § | |
| TALIA RUBIO; | § | |
| DE'ESSENCE LEWIS; | § | |
| LA'SHA M. HAYNES; | § | JURY REQUESTED |
| TAYLOR NESHAY HODGES; and | § | |
| TERRENCE ALFORD, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF ANASIA SMITH'S RESPONSE TO
DEFENDANTS ED GONZALEZ AND HARRIS COUNTY'S
MOTIONS TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................................... ii

I.      INTRODUCTION AND NATURE OF PROCEEDINGS ........................................... 1

II.     STATEMENT OF FACTS ........................................................................................... 2

III.    STATEMENT OF ISSUES .......................................................................................... 5

IV.     STANDARD OF REVIEW .......................................................................................... 6

V.      SUMMARY OF ARGUMENT .................................................................................... 6

VI.     ARGUMENT ............................................................................................................... 7

   A.   The County Defendants' Motions to Dismiss Under Rule 12(b)(4) and (5) Are Moot ...... 7

   B.   Ms. Smith's Claims Against the County Defendants Are Timely ....................................... 8

      1.   The Diligence Rule Does Not Apply .................................................................. 9

      2.   In the Alternative, Ms. Smith Exercised Diligence, Precluding Dismissal ................. 10

      3.   Defendant Gonzalez Abandoned Any Statute of Limitations Argument ..................... 11

      4.   The Court Should Not Dismiss Ms. Smith's Claims Against the County Defendants
           Because of Any Statute of Limitations Argument ............................................... 12

   C.   Ms. Smith Plausibly Alleged Her Municipal and Supervisory Liability Claims Against the
        County Defendants (Counts I–IV) ....................................................................................... 12

      1.   The County Defendants Violated Ms. Smith's Fourteenth Amendment Rights .......... 12

         i.    Defendant Gonzalez was the HCJ policymaker responsible for Ms. Smith's assault.
               15

         ii.   The County Defendants maintained unlawful policies and practices of excessive
               force, head punching, and inadequate training. ............................................... 16

         iii.  The County Defendants had actual or constructive knowledge of, and were
               deliberately indifferent to, their constitutionally deficient policies. ................. 20

         iv.   The County Defendants' deficient policies and supervision caused the violations of
               Ms. Smith's constitutional rights. ................................................................... 26

      2.   Defendant Gonzalez Is Not Entitled to Qualified Immunity ....................................... 27

   D.   Ms. Smith Has Stated a Claim for Punitive Damages Against Defendant Gonzalez ....... 30

   E.   The Court Should Allow Discovery to Proceed on Municipal Liability ......................... 31

VII.    CONCLUSION ........................................................................................................... 31

CERTIFICATE OF SERVICE ......................................................................................... 33

CERTIFICATE OF WORD COUNT ............................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguirre v. City of San Antonio*,
  995 F.3d 395 (5th Cir. 2021) ...................................................................... 28

*Baldwin v. Stalder*,
  137 F.3d 836 (5th Cir. 1998) ...................................................................... 27

*Balle v. Nueces County*,
  952 F.3d 552 (5th Cir. 2017) ...................................................................... 16

*Bartee v. Harris County*,
  No. 4:16-CV-2944, 2018 WL 8732519 (S.D. Tex. Mar. 5, 2018) ............................. 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................... 6

*Beltran v. City of Austin*,
  No. 1:22-CV-00015-LY, 2022 WL 11455897 (W.D. Tex. Oct. 19,
  2022) ......................................................................................................... 31

*Brown v. Bryan County*,
  219 F.3d 450 (5th Cir. 2000) ...................................................................... 14

*Carswell v. Camp*,
  54 F.4th 307 (5th Cir. 2022) ...................................................................... 31

*City of Canton v. Harris*,
  489 U.S. 378 (1989) .................................................................................... 20

*City of Newport v. Fact Concerts, Inc.*,
  453 U.S. 247 (1981) .................................................................................... 31

*Colony Ins. Co. v. Peachtree Constr., Ltd.*,
  647 F.3d 248 (5th Cir. 2011) ........................................................................ 6

*Connick v. Thompson*,
  563 U.S. 51 (2011) ...................................................................................... 24

*Cowart v. Erwin*,
  837 F.3d 444 (5th Cir. 2016) ...................................................................... 29

*Crane v. City of Arlington*,
  50 F.4th 453 (5th Cir. 2022) ................................................................. 28

*Crittindon v. LeBlanc*,
  37 F.4th 177 (5th Cir. 2022) ........................................................... 20, 24

*Ehde v. RPM Dining, LLC*,
  No. 1:22-CV-00870-RP, 2023 WL 11915730 (W.D. Tex. June 22,
  2023) .......................................................................................................... 7

*Fairchild v. Coryell County*,
  40 F.4th 359 (5th Cir. 2022) ................................................................. 29

*Gonzales v. Wyatt*,
  157 F.3d 1016 (5th Cir. 1998) ............................................................. 8, 9

*Goodman v. Harris County*,
  571 F.3d 388 (5th Cir. 2009) ................................................................. 15

*Griggs v. Brewer*,
  841 F.3d 308 (5th Cir. 2016) ................................................................. 26

*Groden v. City of Dallas*,
  826 F.3d 280 (5th Cir. 2016) ................................................................. 16

*Hanks v. Rogers*,
  853 F.3d 738 (5th Cir. 2017) ................................................................. 29

*Hare v. City of Corinth*,
  74 F.3d 633 (5th Cir. 1996) (en banc) .................................................. 14

*Harrington v. State Farm Fire & Cas. Co.*,
  563 F.3d 141 (5th Cir. 2009) ................................................................... 6

*Hope v. Pelzer*,
  536 U.S. 730 (2002) ................................................................................ 27

*Howell v. Harris County*,
  No. 4:24-CV-468, 2024 WL 3647012 (S.D. Tex. Aug. 1, 2024) ............. 18, 19, 20, 31

*Jackson v. Duke*,
  259 F.2d 3 (5th Cir. 1958) ..................................................................... 10

*Jones v. Lamar County*,
  No. 4:21-CV-156, 2022 WL 17175071 (E.D. Tex. Sept. 9, 2022) ................................ 9

*Kingsley v. Hendrickson*,
  576 U.S. 389 (2015) ................................................................................. 27

*Kohler v. Johnson*,
  396 F. App'x 158 (5th Cir. 2010) ............................................................ 30

*Kolstad v. Am. Dental Ass'n*,
  527 U.S. 526 (1999) ................................................................................. 30

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ..................................................................... 6

*McNeal v. LeBlanc*,
  90 F.4th 425 (5th Cir. 2024) .................................................................... 24

*Monell v. Dep't of Soc. Servs.*,
  436 U.S. 658 (1978) ................................................................................. 13

*Moore v. LaSalle Mgmt. Co.*,
  41 F.4th 493 (5th Cir. 2022) .................................................................... 13

*Paredes v. City of Odessa*,
  128 F. Supp. 2d 1009 (W.D. Tex. 2000) ............................................... 8, 10

*Parker v. LeBlanc*,
  73 F.4th 400 (5th Cir. 2023) ................................................. 22, 24, 25, 28

*Patagonia, Inc. v. Lobdell*,
  No. CV H-18-3653, 2018 WL 6602182 (S.D. Tex. Dec. 17, 2018) ............ 7

*Perry v. Director*,
  No. 6:16-CV-1108, 2017 WL 3634189 (E.D. Tex. May 12, 2017),
  *report and recommendation adopted*, No. 6:16-CV-1108, 2017 WL
  3623045 (E.D. Tex. Aug. 22, 2017) ........................................................ 11

*Peterson v. City of Fort Worth*,
  588 F.3d 838 (5th Cir. 2009) .................................................................... 23

*Piotrowski v. City of Houston*,
  237 F.3d 567 (5th Cir. 2001) .............................................................. 12, 13

*Randle v. Graham*,
  No. 4:24-CV-4758, 2025 WL 1507705 (S.D. Tex. May 6, 2025), *report
  and recommendation adopted*, No. 4:24-CV-04758, 2025 WL 1504394
  (S.D. Tex. May 23, 2025) .......................................................................... 9

*Redburn v. City of Victoria*,
  898 F.3d 486 (5th Cir. 2018) ........................................................................... 8

*Salzgitter Mannesmann Int'l (USA) Inc. v. Alexander Steel Sales, Inc.*,
  No. 4:10-CV-4900, 2011 WL 1843009 (S.D. Tex. May 16, 2011) ............................... 6

*Sanchez v. Young County (Sanchez I)*,
  866 F.3d 274 (5th Cir. 2017) ................................................................... 14, 24

*Sanchez v. Young County (Sanchez II)*,
  956 F.3d 785 (5th Cir. 2020) ................................................................... 17, 24

*Scott v. Moore*,
  114 F.3d 51 (5th Cir. 1997) ............................................................................ 14

*Shepherd v. Dallas County*,
  591 F.3d 445 (5th Cir. 2009) ................................................................... 14, 24

*Smith v. Brenoettsy*,
  158 F.3d 908 (5th Cir. 1998) ......................................................................... 15

*Smith v. Wade*,
  461 U.S. 30 (1983) ...................................................................................... 30

*Sockwell v. Phelps*,
  20 F.3d 187 (5th Cir. 1994) .......................................................................... 30

*Stokes v. Delcambre*,
  710 F.2d 1120 (5th Cir. 1983) ....................................................................... 30

*Trammell v. Fruge*,
  868 F.3d 332 (5th Cir. 2017) ................................................................... 27, 28

*Turner v. Pleasant*,
  663 F.3d 770 (5th Cir. 2011) ........................................................................... 6

*Turner v. Upton County*,
  915 F.2d 133 (5th Cir. 1990) ......................................................................... 15

*Wagner v. Harris County*,
  No. 4:23-CV-02886, 2024 WL 2836332 (S.D. Tex. June 4, 2024) ...................... 18, 20

*Wallace v. Kato*,
  549 U.S. 384 (2007) ................................................................................. 9, 10

*Ward v. Harris County*,
    No. 2:23-CV-01708 (S.D. Tex.) ................................................................ 19

*West v. Conrail*,
    481 U.S. 35 (1987) ...................................................................................... 9

*Yohey v. Collins*,
    985 F.2d 222 (5th Cir. 1993) ................................................................... 11

**Statutes**

42 U.S.C. § 1983 ............................................................................... 8, 9, 10, 30

Tex. Loc. Gov't Code § 351.034(a) ......................................................... 15

Tex. Loc. Gov't Code § 351.035 ............................................................... 15

Tex. Loc. Gov't Code § 351.041(a) ......................................................... 15

**Other Authorities**

Fed. R. Civ. P. 3 .......................................................................................... 10

Fed. R. Civ. P. 4 ............................................................................................ 9

Fed. R. Civ. P. 4(m) ...................................................................................... 7

Fed. R. Civ. P. 12(b)(4) ...................................................................... 5, 6, 7, 8

Fed. R. Civ. P. 12(b)(5) ...................................................................... 5, 6, 7, 8

Fed. R. Civ. P. 12(b)(6) ......................................................................... 6, 21, 22

https://charts.hctx.net/jailpop/App/ ......................................................... 22

https://www.cdc.gov/nchs/products/databriefs/db492.htm ...................... 22

Tina Macias, Jeremy Rogalski, Jennifer Cobb, *'Struck' - Hundreds of inmates punched in head in Harris County Jail*, KHOU 11 (Dec. 6, 2024) .............................................................................................................. 4

U.S. Const. amend. I ...................................................................................... 2

U.S. Const. amend. XIV ...................................................................... 2, 12, 28

## I. INTRODUCTION AND NATURE OF PROCEEDINGS

Nine officers assaulted Plaintiff Anasia Smith ("Ms. Smith") on July 16, 2023, in the Harris County Jail ("HCJ"). Defendant Paulita Franco, a detention officer at HCJ, instigated a verbal altercation with Ms. Smith, taunted her, and struck her in the head. As Ms. Smith reacted in self-defense, Defendant Franco continued to punch Ms. Smith repeatedly. Defendant Franco's fellow officers and defendants joined the assault, striking Ms. Smith at least forty-five times, including more than two dozen punches to the head while Ms. Smith lay in the fetal position surrounded by guards. Two years later, Ms. Smith still suffers the physical, psychological, and emotional effects of the assault.

This violent assault on Ms. Smith, while tragic, is not uncommon in HCJ. Defendant Gonzalez's public statements; the pattern, practice, or custom of similar incidents; and reports by third-party oversight agencies all demonstrate that, for years, Defendant Gonzalez had actual or constructive knowledge that his subordinates were inflicting gratuitous violence on people in custody. According to one report, Harris County detention officers struck detained individuals in the head in response to passive resistance, or no resistance at all, more than 800 different times over four years. *See* Dkt. 1, at 17 ¶ 64. Despite this pattern of gratuitous violence, Defendant Gonzalez, the chief administrator of the jail and Harris County's final policymaker, failed to provide any training on necessary limits on punching people in the head. Defendant Gonzalez knew of and disregarded the significant risk that his jailers would inflict unconstitutional violence on detainees like Ms. Smith.

On June 9, 2025, Ms. Smith filed this action against Defendant Gonzalez, in his

individual capacity, and Harris County (the "County") (together, the "County Defendants"), in addition to six other defendants: Detention Officers Paulita Franco, Talia Rubio, De'Essence Lewis, and La'Sha Haynes, and Sergeants Taylor Hodges and Terrence Alford (collectively, "Defendant Officers"). Dkt. 1. Ms. Smith brings claims against Defendant Gonzalez for supervisory liability under the Fourteenth Amendment of the U.S. Constitution and against Harris County for municipal liability for conditions of confinement, episodic acts and omissions, and failure to train in violation of the Fourteenth Amendment. *Id.* Ms. Smith also brings claims against other defendants for excessive force under the Fourteenth Amendment, retaliation under the First Amendment, supervisory liability, and failure to intervene. *Id.*

On July 7, 2025, Defendant Gonzalez filed his Motion to Dismiss. Dkt. 19. On July 21, 2025, Harris County filed its Motion to Dismiss. Dkt. 33. The same day, Defendant Gonzalez filed a Correction and Incorporation by Reference. Dkt. 34. For the reasons stated herein, the Court should deny these Motions on all grounds.

## II. STATEMENT OF FACTS

Ms. Smith was working her voluntary shift cleaning her unit at HCJ on the night of July 15, 2023. Dkt. 1, at 5 ¶¶ 19–20. Exhausted, at around 1:00 a.m. on July 16, Ms. Smith decided to resign from the position. *Id.* at 5–6 ¶ 21. Defendant Franco followed Ms. Smith down the hallway as she went to the command center to resign, taunting Ms. Smith with profane, inflammatory comments. *Id.* at 6 ¶¶ 24–26. Ms. Smith responded verbally and stepped forward, and Defendant Franco taunted her again. *Id.* at 7 ¶ 27. Defendant Franco then suddenly punched Ms. Smith in the head. *Id.* Shocked, Ms. Smith instinctively hit

back against the larger Defendant Franco, as Defendant Franco continued hitting Ms. Smith, forcing her down the hallway. *Id.* ¶ 28.

Defendant Franco continued hitting Ms. Smith as Defendant La'Sha Haynes arrived, and within seconds, Defendant Haynes also began punching Ms. Smith in the head. *Id.* ¶ 29. Defendants Franco and Haynes continued punching Ms. Smith in the head, driving her into a wall. *Id.* at 8 ¶ 29. Defendant De'Essence Lewis joined the assault, and the three officers drove Ms. Smith into another wall and onto the floor, punched her head and face, and dragged her backwards. *Id.* at 8–9 ¶¶ 30–31. As Ms. Smith curled into the fetal position, lifting her arms to protect her head, Defendant Talia Rubio joined the assault and began punching Ms. Smith and pulling her hair. *Id.* at 9 ¶¶ 32–33. Ms. Smith was immobilized on the floor. *Id.* ¶ 34.

The four officers surrounded Ms. Smith and continued hitting her. *Id.* at 10 ¶ 35. As more guards, including Defendant Sergeant Terrence Alford, ran in, the officers continued surrounding Ms. Smith on the floor, holding her legs down. *Id.* ¶ 36. Defendants Franco and Rubio punched Ms. Smith's head repeatedly as Ms. Smith lay defenseless, and Defendant Rubio grabbed Ms. Smith's hair and shoved her face into the concrete floor. *Id.* As officers began to handcuff Ms. Smith, Defendant Sergeant Taylor Hodges entered and helped escort Ms. Smith to medical. *Id.* at 11 ¶ 37. Altogether, Defendant Officers punched and struck Ms. Smith at least forty-five times. *Id.* ¶ 38.

Ms. Smith was left in solitary confinement for several weeks, without mental health care or support. *Id.* at 13–14 ¶¶ 46–49. She was taunted and threatened by officers, and witnessed two other assaults. *Id.* Ms. Smith was released from jail two months later. *Id.* at

3

14 ¶ 50. Since the assault, Ms. Smith has suffered headaches, dizziness, short-term memory loss, severe back pain, anxiety, hypervigilance, and suicidal ideation, and has been diagnosed with major depressive disorder for the first time. *Id.* at 14–16 ¶¶ 52–63.

Ms. Smith's assault was one in a long line arising from Defendant Gonzalez's constitutionally inadequate leadership of HCJ, causing Harris County's staff to treat "prisoners as a punching bag." *Id.* at 17 ¶ 65. According to one investigation, there were more than 800 incidents of staff punching residents in the head under "questionable" circumstances between 2020 and 2023, some of which resulted in death. Tina Macias, Jeremy Rogalski, Jennifer Cobb, *'Struck' – Hundreds of inmates punched in head in Harris County Jail*, KHOU 11 (Dec. 6, 2024), https://www.khou.com/article/news/investigations/struck-inside-harris-county-jailinmate-head-punch-houston-texas-sheriff-ed-gonzalez-detention-officer/285-40eea725-3ab7-49dc-8b18-0d0840e267c5 (last visited Aug. 8, 2025); *see* Dkt. 1, at 17 ¶¶ 64–66. Defendant Gonzalez failed to address this pervasive violence, which he knew was his duty. In one instance, he allowed seven officers who were arrested for six 2022 head-punching incidents to return to work, even though he later acknowledged he should have removed them from the floor. *Id.* at 18 ¶ 67.

Defendant Gonzalez has admitted to deficiencies in training on punching detained individuals in the head. *Id.* ¶¶ 69–70. HCJ training documents and policies provided no substantive guidance on whether and when head strikes are permissible—if they mentioned punching at all. *Id.* at 20–21 ¶¶ 75, 77–78. Under Defendant Gonzalez's leadership, the Texas Commission on Jail Standards ("TCJS") published at least ten notices of noncompliance directly implicating issues with staff in HCJ. *Id.* at 20 ¶ 73. Despite

acknowledging the culture of violence in HCJ even before he was elected, *id.* at 19 ¶ 71, it was not until 2025 that Defendant Gonzalez made any changes to HCJ policy regarding head punches, *id.* at 21–22 ¶ 79.

Although Defendant Gonzalez admitted to the dangerous levels of staff violence in HCJ, including "unacceptable" use of "head strikes" as an "impulsive" or "first reaction," he failed to implement necessary policies and training to remedy the ongoing constitutional violations. *Id.* at 20 ¶¶ 74–75; *id.* at 21–22 ¶¶ 78–81.

## III. STATEMENT OF ISSUES

The following issues are presented:

1.  Whether the County Defendants' Rule 12(b)(4) and (5) arguments are moot.

2.  Whether the County Defendants were sued within the limitations period.

3.  Whether Defendant Harris County is entitled to dismissal of Ms. Smith's municipal liability claims.

4.  Whether Defendant Gonzalez is entitled to dismissal of Ms. Smith's claim that he failed to supervise and train HCJ personnel.

5.  Whether Defendant Gonzalez is entitled to qualified immunity from that claim.

6.  Whether Defendant Gonzalez is entitled to dismissal of Ms. Smith's claim for punitive damages.

7.  Whether discovery against Defendants who do not assert qualified immunity should be stayed pending resolution of Defendant Gonzalez's assertion of qualified immunity.

## IV. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(4) and (5), "[d]ismissal is generally not appropriate where 'there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly.'" *Salzgitter Mannesmann Int'l (USA) Inc. v. Alexander Steel Sales, Inc.*, No. 4:10-CV-4900, 2011 WL 1843009, at *1 (S.D. Tex. May 16, 2011) (citation modified).

A complaint may be dismissed under Rule 12(b)(6) only if it fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation modified). A court must "take[] all facts pleaded in the complaint as true," *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009), and "construe facts in the light most favorable to the nonmoving party," *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). To satisfy this standard, a complaint need only be "plausible"; it "need not contain detailed factual allegations." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).

## V. SUMMARY OF ARGUMENT

The Court should deny the County Defendants' Motions to Dismiss. First, their arguments under Rule 12(b)(4) and (5) are moot, as Ms. Smith has corrected any alleged defects in service. Second, Ms. Smith timely filed suit within the statute of limitations period. Third, Ms. Smith has plausibly alleged Defendant Harris County is liable as a municipality for its officers' violent assault. Fourth, Ms. Smith has plausibly alleged

Defendant Gonzalez is liable as a supervisor for the assault on Ms. Smith. Fifth, the allegations against Defendant Gonzalez, taken as true, demonstrate that he violated clearly established law such that he is not entitled to qualified immunity. Sixth, Ms. Smith has stated a claim for punitive damages against Defendant Gonzalez. Finally, discovery against Defendant Harris County should not be stayed because of Defendant Gonzalez's assertion of qualified immunity.

## VI. ARGUMENT

### A. The County Defendants' Motions to Dismiss Under Rule 12(b)(4) and (5) Are Moot

The Court should deny the County Defendants' Motions to Dismiss under Rule 12(b)(4) and (5) because Ms. Smith has corrected the alleged deficiencies in service. The County Defendants take no issue with service of the Complaint itself or the summons, instead resting their Rule 12(b)(4) and (5) arguments solely on service of Exhibit A to the Complaint—the surveillance video of Ms. Smith's assault. On July 22 and 23, 2025, Ms. Smith properly served that exhibit on these Defendants. Dkts. 39, 41. Service was within ninety days of the Complaint's filing on June 9, 2025, and thus was proper under Federal Rule of Civil Procedure 4(m). Because the County Defendants were properly served with all parts of the Complaint, their Rule 12(b)(4) and (5) arguments are moot. *See Ehde v. RPM Dining, LLC*, No. 1:22-CV-00870-RP, 2023 WL 11915730, at *3 (W.D. Tex. June 22, 2023) ("Because [Defendant] has been served . . . Defendants' Motion for Dismissal Pursuant to Rule 12(b)(4)–(5) should be denied as moot."); *Patagonia, Inc. v. Lobdell*, No. CV H-18-3653, 2018 WL 6602182, at *1 n.1 (S.D. Tex. Dec. 17, 2018) ("den[ying] as

moot" Rule 12(b)(4) motion where "Plaintiff ha[d] remedied the alleged insufficiency").

Therefore, the Court should reject the County Defendants' Rule 12(b)(4) and (5) argument.

### B.  Ms. Smith's Claims Against the County Defendants Are Timely

Ms. Smith's claims against the County Defendants are timely. In § 1983 suits, "the applicable limitations period is two years" according to Texas law. *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018). Defendant Officers assaulted Ms. Smith on July 16, 2023. Dkt. 1, at 5 ¶ 21. Ms. Smith filed this case on June 9, 2025. *Id.* Thus, she timely filed this action within the two-year limitations period. *See Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998) ("[A] suit is commenced by the filing of the plaintiff's complaint in the clerk's office.").

The County Defendants try to obscure this straightforward conclusion by relying on Texas's "diligence rule." Dkt. 33, at 10 ¶ 29. Under the diligence rule, a plaintiff "bring[s] suit on a state law claim within the two-year statute of limitations" only where the plaintiff either serves the defendant before "the limitations period has expired" or "exercises due diligence in procuring service on the defendant" "after the limitations period has expired." *See Paredes v. City of Odessa*, 128 F. Supp. 2d 1009, 1016 (W.D. Tex. 2000) (citation modified).

According to the County Defendants, Ms. Smith's claims are time-barred because the limitations period expired on July 16, 2025, at which point they allege service was defective. Dkt. 33, at 11–12 ¶ 32. This argument fails for several reasons. First, Ms. Smith filed her case within the statute of limitations period. Texas's diligence rule does not apply to § 1983 claims filed in federal court, and it is undisputed that Ms. Smith properly served

the County Defendants on July 22 and 23, 2025—within the ninety days permitted by Federal Rule of Civil Procedure 4. Second, even if the diligence rule did apply, Ms. Smith would satisfy it. Third, Defendant Gonzalez abandoned any limitations argument by failing to brief it other than by incorporation. Finally, any service error would not warrant dismissal.

### 1. *The Diligence Rule Does Not Apply*

It is well established that the "Texas [diligence] rule does not apply to section 1983 actions in Texas federal court." *See, e.g.*, *Gonzales*, 157 F.3d at 1021 n.1; *see also Randle v. Graham*, No. 4:24-CV-4758, 2025 WL 1507705, at *5 (S.D. Tex. May 6, 2025), *report and recommendation adopted*, No. 4:24-CV-04758, 2025 WL 1504394 (S.D. Tex. May 23, 2025) (Eskridge, J.) ("[T]he Texas rule requiring due diligence in service . . . [generally] does not apply to Section 1983 claims filed in federal court." (quoting *Jones v. Lamar County*, No. 4:21-CV-156, 2022 WL 17175071, at *12 (E.D. Tex. Sept. 9, 2022) (collecting cases))).

The County Defendants do not and cannot cite any case applying the Texas diligence rule to a § 1983 claim in federal court. Instead, the County Defendants cite *Wallace v. Kato*, 549 U.S. 384, 396 (2007), for the unhelpful proposition that "Texas law provides the rules for tolling limitations." Dkt. 33, at 10 ¶ 29. That principle has no relevance here—"when it is necessary [] to borrow a statute of limitations for a federal cause of action, [courts] borrow no more than necessary," *West v. Conrail*, 481 U.S. 35, 39 (1987), and it is unnecessary to borrow tolling rules here. *Kato* concerned whether a bar to certain federal causes of action pending resolution of state criminal cases tolled some § 1983 claims. In a

9

single paragraph explaining its holding, the Court observed that it had "generally referred to state law for tolling rules." *Kato*, 549 U.S. at 394. But nothing in *Kato*, nor any case cited by the County Defendants, involved a rule akin to Texas's diligence rule. *See Jackson v. Duke*, 259 F.2d 3, 6 (5th Cir. 1958) ("[W]hile state law controls as to the time within which an action must be begun, the manner in which it is commenced and when it is deemed to have begun . . . is covered by the Federal Rules of Civil Procedure.").

Because Ms. Smith filed this case on June 9, 2025, within the applicable two-year limitations period, her claims are timely. Fed. R. Civ. P. 3. Ms. Smith has ninety days from June 9 to either properly serve Defendants or "show[] good cause for the failure," *id.* 4(m), which she has done for the County Defendants, Dkts. 39, 41. The Court should reject the County Defendants' limitations argument.

### 2.  In the Alternative, Ms. Smith Exercised Diligence, Precluding Dismissal

Even if the diligence rule did apply, and even assuming, *arguendo*, that service before July 16, 2025, was deficient, Ms. Smith has demonstrated diligence under Texas law. "[I]f the plaintiff exercises due diligence in procuring service on the defendant[,]" then "the date of service will relate back to the date of filing," meaning "the claim will not be barred by the statute of limitations." *Paredes*, 128 F. Supp. 2d at 1016. Ms. Smith has demonstrated diligence in pursuing service of process, so her claims are not time-barred.

The County Defendants erroneously argue that Ms. Smith "intentionally attempted defective service." Dkt. 33, at 11 ¶ 32; *see* Dkt. 19, at 6 ¶ 14. This claim is belied by the facts. Ms. Smith filed this suit on June 9, 2025, Dkt. 1, and requested that the Court issue summonses on all Defendants the same day, Dkt. 2. Ms. Smith served the Complaint and

summons on Defendant Gonzalez on June 13, 2025. Dkt. 26. After several unsuccessful attempts to locate a County employee willing to accept service, Ms. Smith served Defendant Harris County on June 30, 2025. Dkt. 29. Although the Complaint initially included the cover sheet for Exhibit A, the flash drive containing the video was inadvertently omitted. After learning of this oversight on July 7, 2025, Ms. Smith promptly served the video on the County Defendants on July 9 (Harris County) and 11 (Gonzalez), 2025. Dkts. 33, at 11 ¶ 32; 34, at 2 ¶ 3. After learning of alleged deficiencies on July 21, 2025, in an abundance of caution, Ms. Smith again served the Complaint, summonses, and video on Defendants on July 22 and 23, 2025. Dkts. 39, 41. Since filing her Complaint, Ms. Smith has promptly, diligently, and repeatedly attempted service on the County Defendants.

### 3. *Defendant Gonzalez Abandoned Any Statute of Limitations Argument*

Defendant Gonzalez raises his limitations argument solely in his Notice of Correction, by incorporating the arguments in Defendant Harris County's brief, rather than in an amended motion. Dkt. 34, at 2 ¶¶ 2–4. Defendant Gonzalez has therefore "abandoned [these arguments] by failing to argue them in the body of his brief," and the Court should disregard them as improperly raised. *See, e.g.*, *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993); *Perry v. Director*, No. 6:16-CV-1108, 2017 WL 3634189, at *2 (E.D. Tex. May 12, 2017), *report and recommendation adopted*, No. 6:16-CV-1108, 2017 WL 3623045 (E.D. Tex. Aug. 22, 2017).

4. *The Court Should Not Dismiss Ms. Smith's Claims Against the County Defendants Because of Any Statute of Limitations Argument*

The Court should reject the County Defendants' limitations argument for the reasons above. But even if the Court disagrees and finds service irreparably defective, it should still allow the case to proceed by striking the video exhibit from the record and considering Ms. Smith's Complaint without the later-served exhibit.

**C. Ms. Smith Plausibly Alleged Her Municipal and Supervisory Liability Claims Against the County Defendants (Counts I–IV)**

Ms. Smith has stated claims for municipal and supervisory liability for Defendant Officers' excessive force in punching her more than forty-five times in response to, at most, passive resistance. Even though Defendant Gonzalez did not personally punch her, he and Defendant Harris County are just as liable as those who did punch Ms. Smith because of the County Defendants' *de facto* policy, which resulted in the assault on Ms. Smith. The law was clearly established that Defendant Gonzalez violated Ms. Smith's right to be free from excessive force, such that he is not entitled to qualified immunity.

1. *The County Defendants Violated Ms. Smith's Fourteenth Amendment Rights*

Ms. Smith has stated claims against both County Defendants, for municipal and supervisory liability, respectively. The County Defendants raise similar, if not identical, defenses to Ms. Smith's claims, and their claims fail for similar reasons.

Ms. Smith has plausibly alleged Defendant Harris County is liable for the assault she suffered. A municipality may be held liable for constitutional violations if a plaintiff establishes "three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of*

*Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "Actual or constructive knowledge of [the challenged policy or] custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority," which can be established where such a policy "was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Piotrowski*, 237 F.3d at 579. (citation modified). "The Supreme Court has explained that a custom may give rise to liability under *Monell* if the practice is so persistent and widespread as to practically have the force of law." *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022) (citation modified).

Here, Ms. Smith has plausibly alleged that Defendant Gonzalez, Defendant Harris County's final policymaker, had actual or constructive knowledge of HCJ's *de facto* policy of using excessive force, specifically head punches, against detained individuals who engaged in, at most, passive resistance. He also had actual or constructive knowledge of a policy of failing to train HCJ staff not to use such violence. These *de facto* policies in turn caused repeated instances of violence amounting to a pattern of excessive force, including that used against Ms. Smith.

These facts sufficiently state a claim that Defendant Harris County is liable for Ms. Smith's assault under three overlapping but distinct theories of municipal liability: conditions of confinement, episodic acts or omissions, and failure to train.

First, Defendant Harris County's policy, practice, and custom of violence, and head punching in particular, subjected Ms. Smith to unconstitutionally excessive blows to her

13

head, amounting to punishment before trial, that were so common as to constitute "conditions of confinement." *See, e.g.*, *Sanchez v. Young County (Sanchez I)*, 866 F.3d 274, 279 (5th Cir. 2017). Under this theory, "an unstated or *de facto* policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials,'" demonstrates "an intended condition or practice." *See Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009) (quoting *Hare v. City of Corinth*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc)).

Second, Defendant Harris County's officers' episodic acts and omissions, which violated Ms. Smith's right to be free from excessive force, were "permitted or caused" by the same policy, practice, and custom of violence. *See id.* "While the specific episode may [have] be[en] perpetrated by one or more persons," the "underlying conditions that may have caused it or made it possible" were Harris County's policies. *Scott v. Moore*, 114 F.3d 51, 54 (5th Cir. 1997).

Third, Defendant Harris County's policy of failing to train HCJ staff caused Ms. Smith's constitutional injury. Dkt. 1, at 18–21 ¶¶ 69–79. The County's failure to train staff was "so deliberately indifferent to the rights of [its] citizens that the County fairly can be said to be culpable for the injury," and was "the moving force behind [Ms. Smith's] injury." *See Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000) (citation modified).

In addition to her municipal liability claims, Ms. Smith has plausibly alleged Defendant Gonzalez is liable as a supervisor for her assault. Not only was he involved as Harris County's final policymaker, but he was also personally responsible as a supervisor— through his deficient policies and lack of training—for his failures to supervise his

14

subordinates.

Defendant Gonzalez may be held liable as a supervisor for his failure to train or supervise if "(1) [he] either failed to supervise or train the subordinate official[s]; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911–12 (5th Cir. 1998)). Defendant Harris County erroneously cites this standard in its own defense, relying on a case that does not concern municipal liability. Dkt. 33, at 17 ¶ 49. Although the allegations below support Ms. Smith's claims for both municipal and supervisory liability, the legal standards are distinct, and the Court should not dismiss Ms. Smith's claims because of the county's misplaced arguments.

Ms. Smith has plausibly alleged Defendant Harris County had a *de facto* policy of using excessive force, specifically head punches, against detained individuals who engaged in, at most, passive resistance. Defendant Gonzalez, Harris County's final policymaker, instituted this custom or practice in HCJ. The *de facto* policy, caused by Defendant Gonzalez's failure to supervise and train, in turn caused pervasive staff violence amounting to a pattern of excessive force.

i.   Defendant Gonzalez was the HCJ policymaker responsible for Ms. Smith's assault.

Texas law designates the Sheriff as the final policymaker for HCJ "by virtue of the office to which [he] has been elected." *See Turner v. Upton County*, 915 F.2d 133, 136 (5th Cir. 1990); *see also* Tex. Loc. Gov't Code §§ 351.034(a), 351.035, 351.041(a) (outlining

15

sheriff's powers, duties, and responsibilities as administrator and keeper of county jail). From 2017 to the time of filing, including during Ms. Smith's 2023 assault, the Harris County sheriff was Defendant Gonzalez.

Defendant Harris County cannot escape liability by suggesting that events predating Defendant Gonzalez's tenure are irrelevant, Dkt. 33, at 15 ¶ 43; those events occurred under the auspices of the sheriff in office—the HCJ policymaker—and so only reaffirm the entrenched pattern of violence in HCJ. Further, these events underscore that Defendant Gonzalez had actual knowledge of the widespread use of excessive force even before assuming office, Dkt. 1, at 19 ¶¶ 71–72, which he failed to address.

Defendant Harris County does not contest that Defendant Gonzalez was its policymaker. And even if it did, "'the specific identity of the policymaker is a legal question that need not be pled' in the complaint to survive a motion to dismiss." *Balle v. Nueces County*, 952 F.3d 552, 559 (5th Cir. 2017) (quoting *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016)).

   ii. <u>The County Defendants maintained unlawful policies and practices of excessive force, head punching, and inadequate training.</u>

Ms. Smith's allegations plausibly establish a policy and practice of head punching and other staff violence under Defendant Gonzalez's watch and a failure to train jail staff not to use such violence. As Defendant Gonzalez stated in 2025, head strikes were "almost an impulsive reaction or the first reaction," which was "unacceptable." Dkt. 1, at 20 ¶ 74. Around the time Defendant Officers assaulted Ms. Smith, a former HCJ employee described the culture as "the more use-of-forces you have, the more bragging rights you

have." *Id.* at 17 ¶ 65 (citation modified). Multiple HCJ training documents, the responsibility of the Sheriff, contain no substantive guidance on when and whether officers may strike people in the head. *Id.* at 20 ¶ 75. Punches, or "hard empty hand control," were not mentioned once in materials for a 2024 Harris County Sherriff's Academy training on use of force. *Id.* at 21 ¶ 78.

That HCJ had *some* policies that merely defined head punching, but placed no limits and provided no guidance on its use, is no defense to the inadequacy of Defendant Gonzalez's supervision and training. *See* Dkt. 19, at 11 ¶ 28 (claiming, "If the Officers violated policy, then Sheriff Gonzalez's policies are sufficient."). Nor is Defendant Harris County's identical contention and its response to its obvious training failures that "there is a training program." Dkt. 33, at 15 ¶ 42; *see Sanchez v. Young County (Sanchez II)*, 956 F.3d 785, 793 (5th Cir. 2020) ("[T]he existence of written[] policies does not, as a matter of law, negate Plaintiffs'[] evidence that the allegedly inadequate[] practices were pervasive."). The mere existence of policies or a training program says nothing of their subject, content, or sufficiency, particularly given the absence of any guidance on punching in the county's policies or training materials. At the time of Ms. Smith's assault, the policy that Defendant Gonzalez points to stated only, "Hard empty hand control includes striking and stunning blows, like kicks, knee, or elbow strikes, and has a possibility of soft or connective tissue damage, skin lacerations, or bone fractures" and was an "[o]ption[] employees may consider" in assessing "the totality of the circumstances of the incident and what type of response may be reasonable." Dkt. 1, at 21 ¶ 77. Unlike policies in other jurisdictions, which make clear that head punches can constitute deadly force and should

therefore be used sparingly, *id.*, HCJ policy offered no guidance or limitations on use of this force, or when "reasonable" force became excessive, *id.*

Further, even if head punching is legally permissible in some circumstances, Defendant Gonzalez has conceded there are limits, claiming, "[W]e do not teach [staff] to strike in the head." *Id.* at 18 ¶ 69. He has called his own staff's routine head punching "unacceptable," *id.* at 20 ¶ 74, and agreed that "we weren't firm enough or clear enough to really address" the problem, *id.* at 22 ¶ 79. In acknowledgment of his failures, Defendant Gonzalez released a new punching policy for HCJ in early 2025, stating head punching "could be considered deadly force" and "should only be considered when maximum effectiveness is needed to subdue a subject that poses a special threat due to factors used to determine reasonableness." *Id.* Setting aside the sufficiency or effectiveness of these changes, Defendant Gonzalez's admission of his previous policy's inadequacy, and his decision to align it more closely with peer jurisdictions' policies, *see id.* at 21 ¶ 77, underscores the unreasonableness of the routine use of excessive head strikes under his watch.

The County Defendants also contend that a Department of Justice ("DOJ") investigation into HCJ is immaterial because it ended in 2019, relying on a closing letter from the DOJ, *see* Dkts. 19, at 12 ¶ 33; 33, at 18 ¶ 50, but other courts have relied on that very investigation as demonstrating a pattern of violence in HCJ around the same time as Ms. Smith's assault. *See Howell v. Harris County*, No. 4:24-CV-468, 2024 WL 3647012, at *3–4 (S.D. Tex. Aug. 1, 2024); *Wagner v. Harris County*, No. 4:23-CV-02886, 2024 WL 2836332, at *8, *12 (S.D. Tex. June 4, 2024); *id.* at *10 n.4 (noting plaintiffs may rely on

"factual allegations in other lawsuits against a municipality" as "the source of similar incidents to support the existence of a policy or custom" even before "a finding of liability"). Further, any actions Defendant Gonzalez took prompting closure of the investigation are beyond the scope of the Complaint and the letter itself and thus cannot be considered at this stage. Finally, the closing letter predates the pattern of head punches described above, indicating that violence continued under Defendant Gonzalez's watch. Indeed, a 2021 noncompliance report from the TCJS documented the "heightened level of tension and inmate hostility at [HCJ]," and an increase in assaults year over year. Dkt. 1, at 19–20 ¶ 73.

The County Defendants also ignore other evidence Ms. Smith alleges of the custom of unjustified violence in HCJ, including the TCJS reports confirming the pattern. *See id.* Indeed, other recent decisions in this district have relied on substantially similar evidence to find plaintiffs have plausibly alleged a "policy of inflicting violence upon detainees in the Harris County Jail" and thus stated claims against Harris County. *See Howell*, 2024 WL 3647012, at *4 (relying on similar evidence, including "the 2009 DOJ Report together with [Defendant Gonzalez's] 2016 statements, the TCJS's 2021 findings, and the allegations of incidents in 2022 and 2023 in the *Wagner* complaint," to hold plaintiff "plausibly allege[d] that (1) there is a longstanding pattern of guards using excessive force against detainees and (2) Sheriff Gonzalez is well aware of this pattern" (citing *Wagner*, 2024 WL 2836332, at *12)); *see also Bartee v. Harris County*, No. 4:16-CV-2944, 2018 WL 8732519, at *5 (S.D. Tex. Mar. 5, 2018); *Ward v. Harris County*, No. 2:23-CV-01708 (S.D. Tex.).

The *Howell* court also found this evidence, and Defendant Gonzalez's failure to

"implement[] new policies to address these concerns" before the 2022 assault in question, sufficient to state a claim for failure to train. 2024 WL 3647012, at *5 (citing *Wagner*, 2024 WL 2836332, at *14); *see also City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989) ("It could also be that the police . . . so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are 'deliberately indifferent' to the need.").

Defendant Officers violated Ms. Smith's right to be free from excessive force when they punched Ms. Smith more than forty-five times, despite her quickly ceasing any arguable resistance, and despite their forcing her onto the floor, in the fetal position, where they continued beating her. Ms. Smith has established that this unconstitutional conduct was part of a pattern and practice at HCJ, sanctioned by Defendant Gonzalez.

iii.  <u>The County Defendants had actual or constructive knowledge of, and were deliberately indifferent to, their constitutionally deficient policies.</u>

Ms. Smith has plausibly alleged Defendant Gonzalez—and through him, Defendant Harris County—had, at minimum, constructive knowledge of the pattern of gratuitous violence and head strikes in HCJ. Establishing actual or constructive notice "typically requires showing notice of a pattern of similar constitutional violations due to deficient policies." *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022) (citation modified). Such evidence "permit[s] the inference that Defendants deliberately chose policies causing violations of constitutional rights." *Id.* (citation modified).

Ms. Smith has plausibly shown that the County Defendants had at least constructive knowledge of the more than 800 punching incidents in HCJ between January 2020 and

December 2023. Dkt. 1, at 17 ¶ 64. The Complaint alleges that, in numerous of these 800 incidents, officers punched detainees in the head multiple times after verbal altercations— or for no reason at all. *Id.* For instance, after seven officers were arrested for six head-punching incidents that occurred in 2022, Defendant Gonzalez let them return to work, which he later acknowledged was a mistake. *Id.* at 18 ¶ 67.

The County Defendants respond to these similar incidents by (1) arguing not all head strikes are "excessive force as a matter of law," Dkt. 19, at 14–15 ¶ 39, and (2) improperly attempting to dispute facts alleged in the Complaint with back-of-the-napkin statistics cobbled together from misused jail-population data, *id.* at 14–15 ¶¶ 37–40; *see also* Dkt. 33, at 14 ¶ 40; 18–19 ¶¶ 51–52.

To start, the County Defendants' assertion that use of force is not categorically prohibited in jail, and may be used lawfully, is irrelevant. Dkts. 19, at 9–10 ¶¶ 25–26; 33, at 14 ¶ 40. Ms. Smith does not claim that *all* uses of force, or even all head strikes, are unconstitutional. She merely argues that gratuitous punching in response to, at most, passive verbal resistance, and continued punching of a subdued person, are unlawful. *See infra* Sections VI.C.1.iv–C.2.

As to the County Defendants' math, it is both incorrect and improperly raised in a Rule 12(b)(6) motion. First, the County Defendants miscalculate the rate of head punching, using the annual number of jail admissions as the dividend, when the relevant number is the average daily population. *See* Dkt. 19, at 15 ¶ 40. As the County Defendants recognize, the average daily population is approximately 9,000, making the per capita head-punching rate approximately 8.9%, not 0.2% as the County Defendants assert. Put another way, a

member of Defendant Gonzalez's staff punched someone in the head under questionable circumstances at a rate of more than once every other day for four years.

Second, the County Defendants claim that twenty-seven deaths and nineteen deaths in 2022 and 2023, respectively, were statistically negligible, comparing those numbers to the death rate in the U.S. population as a whole. Dkts. 19, at 14 ¶ 37; 33, at 18 ¶ 51. But their comparison, even after correcting the arithmetic, *see* Dkt. 34, at 1 ¶ 1, is inapposite—more than two-thirds of deaths in the general population annually are among those sixty-five and older, a demographic that makes up *less than two percent* of the current HCJ population. *See* Dkt. 19, at 14 ¶ 36 (https://www.cdc.gov/nchs/products/databriefs/db492.htm); *id.* at 2 ¶ 6(a) (https://charts.hctx.net/jailpop/App/). Moreover, no matter the overall death rate, the County Defendants cannot credibly contend that Defendant Gonzalez was unaware of a person in his care dying approximately every other week over a two-year period. The widely publicized deaths of Jaquaree Simmons and Jacoby Pillow from beatings by jail staff in 2021 and 2023, respectively, were themselves enough to put Defendant Gonzalez on notice of the problem. Dkt. 1, at 17 ¶ 66.

The County Defendants' reliance on poorly framed or incorrect statistics cannot justify their dismissal from this action. More fundamentally, as this disagreement over math reveals, such complex fact disputes are inappropriate at the motion to dismiss stage. On a Rule 12(b)(6) motion, the Court must take "all well-pleaded facts as true and view those facts in the light most favorable to" Ms. Smith. *Parker v. LeBlanc*, 73 F.4th 400, 406 (5th Cir. 2023) (citation modified). The Court should reject these contrived statistics because, at best, they merely highlight a factual dispute about measuring an alarming pattern of

abuse. Ms. Smith should be allowed to develop the record and elicit expert testimony on this issue for the Court to resolve at a later stage.

The cases the County Defendants cite only prove how extreme Ms. Smith's factual allegations are, allowing an inference that Defendant Gonzalez had at least constructive knowledge of, and disregarded, the rampant excessive head punching in HCJ. In *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009), at summary judgment, the Fifth Circuit found that twenty-seven complaints against police officers across three years could not establish a pattern. *Id.* at 851. In contrast here, Ms. Smith has alleged *more than 800 incidents* involving the same type of force in HCJ over four years, demonstrating that Defendant Gonzalez, Harris County's final policymaker, had constructive or actual knowledge of HCJ's *de facto* policy of violence.

Ms. Smith has also plausibly alleged the County Defendants were deliberately indifferent in promulgating and maintaining their unconstitutional *de facto* policies, given their actual or constructive knowledge. Defendant Harris County argues that Ms. Smith has not established deliberate indifference, Dkt. 33, at 15 ¶ 44, which is incorrect for two reasons. First, as it pertains to her episodic acts and failure to train claims, Ms. Smith's allegations establish, at minimum, Defendant Gonzalez's constructive knowledge of, and failure to address, the pattern of violence and inadequate training, which plausibly establishes his deliberate indifference as policymaker. *See supra* Sections VI.C.1.ii–iii. Defendant Harris County equivocates, asserting that if it had *any* policies regarding use of force that officers violated, "then Harris County's policies are sufficient." Dkt. 33, at 15 ¶ 42. This statement is circular and wrong: The county's minimal policies were far from

adequate, *and* the officers' actions were so obviously unconstitutional as to violate those insufficient standards. *See supra* Section VI.C.1.i; *see also Sanchez II*, 956 F.3d at 793.

Second, regarding her claim for unconstitutional conditions of confinement, Ms. Smith need not establish deliberate indifference; she "is relieved from the burden of demonstrating . . . actual intent to punish because . . . intent may be inferred from the decision to expose [her] to an unconstitutional condition." *Shepherd*, 591 F.3d at 452. Ms. Smith has alleged a pattern of unconstitutional acts reflecting a *de facto* policy of "punishment in advance of trial," *Sanchez I*, 866 F.3d at 279, sufficient to "prove an intended condition or practice," *Shepherd*, 591 F.3d at 452; *see supra* Sections VI.C.1.ii–iii. These allegations sufficiently support her claim.

Likewise, Ms. Smith has plausibly alleged that Defendant Gonzalez was deliberately indifferent, as he was "on 'notice that a particular omission in [his] training program cause[d his] employees to violate citizens' constitutional rights,'" and Ms. Smith has "point[ed] to '[a] pattern of similar constitutional violations by untrained employees.'" *McNeal v. LeBlanc*, 90 F.4th 425, 432 (5th Cir. 2024) (quoting *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011)); *see also, e.g.*, *Crittindon*, 37 F.4th at 186–87 (finding deliberate indifference of supervisors from pattern of past violations was established through legislative report, newspaper editorial, and testimony in similar lawsuit). As discussed, Defendant Gonzalez had "actual or constructive notice that [his] failure to adopt policies would result in constitutional violations," demonstrating the "causal connection between [his] wrongful conduct . . . and [the] constitutional violation." *Parker*, 73 F.4th at 405 (citation modified).

24

Defendant Gonzalez's arguments that he "was [not] personally involved in the use of force" or the "direct supervisor of any of the individual defendants," Dkt. 19, at 10 ¶ 27, are irrelevant because Ms. Smith has plausibly alleged "a sufficient causal connection between [Defendant Gonzalez's] conduct and the [excessive force]." *Parker*, 73 F.4th at 405; *see supra* Sections VI.C.1.ii–iii.

Defendant Gonzalez knew of the problems at HCJ, yet allowed them to persist for years. As a candidate in 2016, Defendant Gonzalez stated publicly, "We've got to end this culture that quickly leads to physical altercation [in the jail,]" that such change necessarily "starts with leadership," and that "we . . . need to improve training as well." Dkt. 1, at 19 ¶ 71. Despite his knowledge, eight years later, Defendant Gonzalez admitted he had not curtailed the rampant staff violence—regarding "strikes to the head," he noted, "[W]e weren't firm enough or clear enough to really address" the problem. *Id.* at 22 ¶ 79; *see also supra* Sections VI.C.1.ii–iii. Relying on Defendant Gonzalez's public comments demonstrating actual knowledge of the pattern or practice of violence and head strikes, and the evidence discussed above, putting him on at least constructive notice, *see supra* Sections VI.C.1.ii–iii, Ms. Smith has plausibly alleged that he acted with deliberate indifference, which also establishes Defendant Harris County's liability.

Ms. Smith has thus plausibly alleged the County Defendants' constructive or actual knowledge of, and deliberate indifference to, the constitutional infirmity of their *de facto* policies.

iv.   The County Defendants' deficient policies and supervision caused the violations of Ms. Smith's constitutional rights.

Ms. Smith has plausibly alleged that Harris County's *de facto* policies of head punching and failing to train its staff were moving forces behind her unconstitutional assault. In an institution in which "the more use-of-forces you have, the more bragging rights you have," Dkt. 1, at 17 ¶ 65 (citation modified), and where head strikes were "an impulsive reaction or the first reaction," *id.* at 20 ¶ 74, it was foreseeable that an officer would punch Ms. Smith in the head instead of de-escalating a verbal confrontation the officer herself started; that the officer would continue punching Ms. Smith when she was subdued on the floor; and that multiple officers, upon encountering the scene, would join in the punching rather than de-escalate or temper the force in any way. *Id.* at 7–10 ¶¶ 27–36. HCJ's entrenched custom of violence caused the violation of Ms. Smith's constitutional rights, and the Court should deny the County Defendants' Motions.

The County Defendants dispute whether the assault on Ms. Smith was in fact unconstitutional. But the facts here are nothing like those in the cases on which they rely. *See* Dkts. 19, at 14–15 ¶¶ 39–40; 33, at 14 ¶ 40. In *Griggs v. Brewer*, an officer punched "a drunken, actively resisting" plaintiff "several times" while attempting to restrain him and punched the plaintiff one more time when he was handcuffed, after the plaintiff kicked the officer in the chest. 841 F.3d 308, 311, 315 (5th Cir. 2016). By contrast, Ms. Smith was neither drunk nor actively resisting when Defendant Franco first punched her, and officers continued to punch her while she was subdued on the floor, in total at least forty-five times. Far from establishing all head punches are constitutional, *Griggs* only emphasizes, by

comparison, the objective unreasonableness of the conduct Defendant Gonzalez sanctioned.

The County Defendants' other citations are puzzling. First, *Kingsley v. Hendrickson lowered* the standard for people in pretrial detention to establish excessive force. 576 U.S. 389, 397, 416 (2015). Second, *Baldwin v. Stalder* is an inapposite case concerning use of mace on incarcerated individuals who jumped on seats, spat at officers, and otherwise caused a disturbance on a prison bus and refused to stop after three verbal warnings. 137 F.3d 836, 838 (5th Cir. 1998). Here, Ms. Smith alleges Defendant Officers' prolonged, excessive blows to her head, in response to passive verbal resistance, and their escalation as she lay in the fetal position, were unconstitutional. The County Defendants' cases do not support their position, or diminish the constitutional violations Ms. Smith has pleaded.

Ms. Smith has thus plausibly alleged that the County Defendants' deficient policies, supervision, and training were the moving force leading Defendant Officers to assault Ms. Smith in violation of her constitutional rights.

### 2. *Defendant Gonzalez Is Not Entitled to Qualified Immunity*

The Court should also reject Defendant Gonzalez's argument that he is entitled to qualified immunity, because Ms. Smith has plausibly alleged his constitutionally deficient supervision violated clearly established law. In evaluating an assertion of qualified immunity, courts consider (1) whether the defendant committed an underlying constitutional violation and (2) whether the law was clearly established at the time, such that a reasonable officer in the defendant's place would have known the action was unlawful. *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017); *see Hope v. Pelzer*, 536

U.S. 730, 739 (2002). "The purpose of this inquiry is to determine whether the officer had fair notice that his conduct was unlawful," *Crane v. City of Arlington*, 50 F.4th 453, 466 (5th Cir. 2022) (citation modified), and a court "need not find the facts to be precisely the same as a previous case to hold that the Officers would have had fair warning," *Aguirre v. City of San Antonio*, 995 F.3d 395, 419 (5th Cir. 2021) (citation modified).

As detailed above, *supra* Sections VI.C.1.ii–iv, Ms. Smith satisfies the first prong because she has plausibly alleged that Defendant Gonzalez's inadequate supervision and training caused her unconstitutional assault, and that Defendant Gonzalez acted with deliberate indifference.

On prong two, Defendant Gonzalez had fair warning of his constitutional violations, as the law at the time clearly established that allowing officers to use repeated head punches to assault a jail resident subdued on the floor violated the Fourteenth Amendment. *Aguirre*, 995 F.3d at 416. "The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Parker*, 73 F.4th at 407 (citation modified). Here, Defendant Gonzalez sanctioned known constitutional violations by his subordinates under clearly established law. *See* Dkt. 48, at 10–14.

The Fifth Circuit has long held that officers may not use excessive force against a person presenting no more than minimal resistance. *See Trammell*, 868 F.3d at 343 (finding, despite plaintiff's failure to follow instructions, "the law at the time . . . clearly established that it was objectively unreasonable for several officers to tackle an individual who was

not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp"); *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (denying qualified immunity to officer who, facing passive resistance, "abruptly resort[ed] to overwhelming physical force rather than continuing verbal negotiations").

Further, "[w]ithin the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable." *Fairchild v. Coryell County*, 40 F.4th 359, 368 (5th Cir. 2022) (citation modified); *see also Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) ("We have little difficulty concluding that in 2009, . . . it was well-established, in sufficiently similar situations, that officers may not use gratuitous force against a prisoner who has already been subdued . . . or incapacitated." (citation modified)). As discussed above, *see supra* Section VI.C.1.iv, Defendant Gonzalez's citations to *Kingsley* and *Baldwin* for the general proposition that not all force is prohibited in jail are irrelevant to the question of established law here.

Defendant Gonzalez knew of and failed to remedy the rampant violence and routine head punching in his jail. He sanctioned the regular use of head punches by his staff in situations that amounted to excessive force. His failures led Defendant Franco to punch Ms. Smith in the head rather than de-escalating a verbal altercation that Defendant Franco started, and to continue punching Ms. Smith even after she was subdued. Dkt. 1, at 7–11 ¶¶ 27–38. Defendant Gonzalez's failures also caused other officers to enter the scene of a detained individual subdued on the ground and react by punching her repeatedly in the head. *Id.* ¶¶ 29–38. Under clearly established law, the actions of Defendant Gonzalez's

subordinates, caused by his failure to supervise and train, were plainly unconstitutional. Accordingly, the Court should deny qualified immunity to Defendant Gonzalez.

### D. Ms. Smith Has Stated a Claim for Punitive Damages Against Defendant Gonzalez

Under § 1983, punitive damages may be awarded for official conduct that "demonstrates 'reckless or callous indifference' to a person's constitutional rights." *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994) (quoting *Smith v. Wade*, 461 U.S. 30 (1983)) (upholding punitive damages for policy of racially segregating prisoners). Punitive damages may be awarded for conduct that is reckless, including "malicious or wanton or oppressive acts." *Stokes v. Delcambre*, 710 F.2d 1120, 1126 (5th Cir. 1983) (finding punitive damages award proper against sheriff whose practices of failing to separate residents by offense type, failing to implement rules for jail operation, and understaffing jail led to residents being assaulted). "[T]he standard 'at a minimum, require[s] recklessness in its subjective form.'" *Kohler v. Johnson*, 396 F. App'x 158, 162 (5th Cir. 2010) (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)).

Ms. Smith has plausibly alleged that Defendant Gonzalez knew of and endorsed a policy of excessive force, sanctioning the practice of repeatedly punching unresisting residents in the head regularly in the course of jail operations. Dkt. 1, at 17–22 ¶¶ 64–81. He allowed a culture of violence to persist at HCJ throughout the duration of his tenure in office, despite his admitted knowledge of the dangerous situation. *Id.* Relying on these allegations of subjectively reckless conduct, Ms. Smith has stated a claim for punitive damages against Defendant Gonzalez.

Contrary to Defendant Harris County's assertion, Dkt. 33, at 21 ¶ 60, Ms. Smith does not and could not seek punitive damages against it. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

### E.  The Court Should Allow Discovery to Proceed on Municipal Liability

The Court should allow discovery to proceed on Ms. Smith's municipal liability claims against Defendant Harris County, pending resolution of Defendant Gonzalez's Motion invoking qualified immunity. While Ms. Smith does not contest that, under *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022), discovery may be stayed against Defendant Gonzalez, the Court should still allow discovery against Defendant Harris County for municipal liability claims, and against any other defendant not asserting qualified immunity. *See Beltran v. City of Austin*, No. 1:22-CV-00015-LY, 2022 WL 11455897, at *3 (W.D. Tex. Oct. 19, 2022) (permitting deposition of city representative regarding city policies notwithstanding invocation of qualified immunity by individual defendants); *Howell*, 2024 WL 3647012, at *7 (permitting discovery against Harris County notwithstanding stay of discovery against individual defendants pending resolution of their qualified-immunity claims).

## VII. CONCLUSION

For the foregoing reasons, the Court should deny the County Defendants' Motions to Dismiss.

DATED: August 11, 2025

Respectfully submitted,

/s/ *Molly Petchenik*
Molly Petchenik, *Attorney in Charge*
Texas Bar No. 24134321
Southern District No. 3854546
molly@texascivilrightsproject.org
Zachary Dolling
Texas Bar No. 24105809
Southern District No. 3290949
zachary@texascivilrightsproject.org
Christina Beeler
Texas Bar No. 24096124
Southern District No. 3695627
christinab@texascivilrightsproject.org
Travis Fife
Texas Bar No. 24126956
Southern District No. 3734502
travis@texascivilrightsproject.org
Kirsten Budwine
(*pro hac vice*)
Texas Bar No. 24140263
kirsten@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
1405 Montopolis Dr.
Austin, TX 78741
Tel.: (512) 474-5073
Fax: (512) 474-0726

/s/ *Michael Murphy*
Michael Murphy
Texas Bar No. 24051098
Southern District No. 621098
mtmurphy@winston.com
Rachael Thompson
Texas Bar No. 24117139
Southern District No. 3640278
rthompson@winston.com
Matthew Frost
Texas Bar No. 24142920
Southern District No. 3923400
mfrost@winston.com
WINSTON & STRAWN LLP
800 Capitol Street
Suite 2400
Houston, TX 77002
Tel.: (713) 651-2600

Kristin McGough
Southern District Bar No. 3905172
kmcgough@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
Tel.: (202) 282-5000

**ATTORNEYS FOR**
**PLAINTIFF ANASIA SMITH**

## CERTIFICATE OF SERVICE

I certify that, pursuant to the Federal Rules of Civil Procedure, a true copy of the instrument to which this Certificate is attached was duly served upon each party to this cause on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to the parties.

*/s/ Molly Petchenik*
Molly Petchenik

## CERTIFICATE OF WORD COUNT

Pursuant to Court Procedure 18(c), I certify that the word count of this Response is 8,671 words, excluding the portions permitted to be excluded under this Court's Procedures.

*/s/ Molly Petchenik*
Molly Petchenik