UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANASIA SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 4:25-cv-02677 |
| HARRIS COUNTY; | § | |
| ED GONZALEZ; | § | |
| PAULITA FRANCO; | § | |
| TALIA RUBIO; | § | |
| DE'ESSENCE LEWIS; | § | |
| LA'SHA M. HAYNES; | § | JURY REQUESTED |
| TAYLOR NESHAY HODGES; and | § | |
| TERRENCE ALFORD, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF ANASIA SMITH'S RESPONSE TO DEFENDANT
LA'SHA HAYNES'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

I.  INTRODUCTION AND NATURE OF PROCEEDINGS ............................. 1

II. STATEMENT OF FACTS .......................................................... 2

III. STATEMENT OF ISSUES ........................................................ 4

IV. STANDARD OF REVIEW ......................................................... 4

V.  SUMMARY OF ARGUMENT .................................................... 4

VI. ARGUMENT ........................................................................ 5

    A.  Ms. Smith Has Plausibly Alleged That Defendant Haynes Violated
        Her Clearly Established Fourteenth Amendment Right (Count V). ............ 5

        1.  Defendant Haynes is not entitled to qualified immunity
            because she excessively and unreasonably punched Ms. Smith.
            ................................................................................. 6

        2.  Defendant Haynes had fair warning that her conduct violated
            Ms. Smith's constitutional right to be free from excessive
            force ........................................................................... 8

        3.  Defendant Haynes's cases in support of immunity are
            inapposite. ................................................................. 12

    B.  The Court Should Not Stay Discovery on Municipal Liability. ................ 15

VII. CONCLUSION ................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aguirre v. City of San Antonio*,
   995 F.3d 395 (5th Cir. 2021) ............................................................ 5

*Baldwin v. Stalder*,
   137 F.3d 836 (5th Cir. 1998) ...................................................... 14, 15

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .......................................................................... 4

*Beltran v. City of Austin*,
   No. 1:22-CV-00015-LY, 2022 WL 11455897 (W.D. Tex. Oct. 19,
   2022) ................................................................................................ 15

*Boyd v. McNamara*,
   74 F.4th 662 (5th Cir. 2023) ................................................ 7, 8, 9, 10

*Brown v. Lippard*,
   472 F.3d 384 (5th Cir. 2006) ........................................................... 11

*Carswell v. Camp*,
   54 F.4th 307 (5th Cir. 2022) ........................................................... 15

*Colony Ins. Co. v. Peachtree Constr., Ltd.*,
   647 F.3d 248 (5th Cir. 2011) ............................................................. 4

*Cowart v. Erwin*,
   837 F.3d 444 (5th Cir. 2016) ........................................................... 11

*Crane v. City of Arlington*,
   50 F.4th 453 (5th Cir. 2022) ............................................................. 5

*Darden v. City of Fort Worth*,
   880 F.3d 722 (5th Cir. 2018) ........................................................... 14

*Fairchild v. Coryell County*,
   40 F.4th 359 (5th Cir. 2022) ................................................. 10, 11, 12

*Graham v. Connor*,
   490 U.S. 386 (1989) .......................................................................... 6

*Griggs v. Brewer*,
　841 F.3d 308 (5th Cir. 2016) ................................................................. 13, 14

*Hanks v. Rogers*,
　853 F.3d 738 (5th Cir. 2017) ................................................................... 9, 10

*Harrington v. State Farm Fire & Cas. Co.*,
　563 F.3d 141 (5th Cir. 2009) ....................................................................... 4

*Hope v. Pelzer*,
　536 U.S. 730 (2002) ..................................................................................... 5

*Howell v. Harris County*,
　No. 4:24-CV-468, 2024 WL 3647012 (S.D. Tex. Aug. 1, 2024) .............. 15

*Joseph on behalf of Est. of Joseph v. Bartlett*,
　981 F.3d 319 (5th Cir. 2020) ................................................................... 8, 13

*Kingsley v. Hendrickson*,
　576 U.S. 389 (2015) ............................................................................. 6, 7, 14

*Lormand v. US Unwired, Inc.*,
　565 F.3d 228 (5th Cir. 2009) ....................................................................... 4

*Ramirez v. Martinez*,
　716 F.3d 369 (5th Cir. 2013) ....................................................................... 9

*Tiede v. Salazar*,
　518 F. Supp. 3d 955 (W.D. Tex. 2021) ...................................................... 14

*Timpa v. Dillard*,
　20 F.4th 1020 (5th Cir. 2021) ................................................................... 10

*Trammell v. Fruge*,
　868 F.3d 332 (5th Cir. 2017) ................................................................... 5, 10

*Turner v. Pleasant*,
　663 F.3d 770 (5th Cir. 2011) ....................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ............................................................................... 4, 5

U.S. Const. amend I ......................................................................................... 1

U.S. Const. amend XIV ........................................................................*passim*

## I. INTRODUCTION AND NATURE OF PROCEEDINGS

Defendant La'Sha Haynes assaulted Plaintiff Anasia Smith ("Ms. Smith") on July 16, 2023, while Ms. Smith was detained in the Harris County Jail ("HCJ"), where Defendant Haynes worked as a Detention Officer. Following a verbal altercation initiated by another officer, Defendant Paulita Franco, Defendant Franco punched Ms. Smith in the head. Defendant Franco continued striking Ms. Smith as Defendant Haynes entered the scene and immediately began punching Ms. Smith. Other officers subsequently joined in the assault. Defendant Haynes repeatedly punched Ms. Smith in the head, violently forced her to the ground, dragged her to the floor, slammed her back into the floor, and stood over her while delivering blows to a cowering Ms. Smith.

All told, the officers struck Ms. Smith at least 45 times, including at least 30 times when she was subdued on the floor. At the time, Ms. Smith weighed only 107 pounds, wielded no weapon, posed no threat, and had no prior disciplinary history. Two years later, Ms. Smith still suffers the physical, psychological, and emotional effects of the assault.

On June 9, 2025, Ms. Smith filed this action against Defendant Haynes, in addition to seven other defendants: Harris County, Sheriff Ed Gonzalez, Detention Officer Franco, Detention Officer De'Essence Lewis, Detention Officer Talia Rubio, Sergeant Taylor Hodges, and Sergeant Terrence Alford (collectively, "Defendants"). Dkt. 1. Ms. Smith brings claims against Defendant Haynes for excessive force under the Fourteenth Amendment of the U.S. Constitution. *Id.* Ms. Smith also brings claims against other defendants for excessive force, First Amendment retaliation, municipal liability, supervisory liability, and failure to intervene. *Id.*

1

On October 23, 2025, Defendant Haynes filed her Motion to Dismiss. Dkt. 87. The Court should deny that motion for the reasons stated herein.

## II. STATEMENT OF FACTS

Ms. Smith was working her voluntary shift cleaning her unit at HCJ on the night of July 15, 2023. Dkt. 1, at 5 ¶¶ 19–20. Exhausted, at around 1:00 a.m. on July 16, Ms. Smith decided to resign from the position. *Id.* at 5–6 ¶ 21. Defendant Franco followed Ms. Smith down the hallway as she went to the command center to resign, taunting Ms. Smith with profane, inflammatory comments. *Id.* at 6 ¶¶ 24–26. Ms. Smith responded verbally and stepped forward, and Defendant Franco taunted her again. *Id.* at 7 ¶ 27. Defendant Franco then suddenly punched Ms. Smith in the head. *Id.* Shocked, Ms. Smith instinctively hit back against the larger Defendant Franco, as Defendant Franco continued hitting Ms. Smith, forcing her down the hallway. *Id.* ¶ 28.

Defendant Franco continued hitting Ms. Smith as Defendant Haynes arrived, and within seconds, Defendant Haynes also began punching Ms. Smith forcefully in the head. *Id.* at 7–8 ¶ 29. Defendant Franco grabbed Ms. Smith's shoulders and pushed her up against a wall, as Defendant Haynes continued to punch her head. *Id.* at 8 ¶ 29.

Defendant Lewis then joined the assault, and the three officers drove Ms. Smith up against another wall, repeatedly punching her head and face. *Id.* ¶ 30. Defendant Haynes forced Ms. Smith towards the floor as Defendant Franco punched Ms. Smith's head and Defendant Lewis dragged Ms. Smith backwards, and Defendant Franco tripped over Ms. Smith's legs and ended up on the floor. *Id.* at 8–9 ¶¶ 30–31. Ms. Smith curled herself into the fetal position, lifting her arms to protect her head, with Defendant Haynes standing

over her and forcing her shoulders down, and Defendant Lewis continuing her blows. *Id.* at 9 ¶ 32. Defendant Rubio then joined the assault and began punching Ms. Smith in the head. *Id.* ¶ 33.

Although Ms. Smith was immobilized on the floor, trying to protect her head with her arms while surrounded by four officers, still Defendant Haynes held and dragged Ms. Smith backwards by her shirt, and Defendant Rubio punched Ms. Smith in the head and dragged her by her hair. *Id.* at 9–10 ¶¶ 33–35. Grabbing Ms. Smith's arms, which she was attempting to use to shield her face and head, Defendant Haynes slammed Ms. Smith back down onto the floor, and then once more dragged her across the hallway by her shirt. *Id.* at 10 ¶ 35. The officers continued to trade off punching Ms. Smith in the head. *Id.*

As more guards, including Defendant Alford, ran to the scene, the officers surrounded Ms. Smith on the floor, holding her legs down. *Id.* ¶ 36. Defendant Rubio and Franco struck Ms. Smith in the head repeatedly, as Defendant Haynes and others held her down. *Id.* As the officers began to handcuff Ms. Smith, Defendant Sergeant Hodges entered the scene and, with Defendant Rubio, helped escort Ms. Smith to the medical unit. *Id.* at 11 ¶ 37, 12 ¶ 40.

In total, Defendants punched and struck Ms. Smith's head more than 45 times, including at least 30 times while she was on the floor defenseless. *Id.* at 11 ¶ 38. Defendant Haynes punched Ms. Smith in the head approximately 10 times, forced her to the floor, dragged her by her shirt, and slammed her back into the floor. *See id.* at 7–10, ¶¶ 29–36; Dkt. 1-1.

3

## III. STATEMENT OF ISSUES

Defendant Haynes's Motion presents the following issues:

1. Whether Defendant Haynes is entitled to qualified immunity for her violation of Ms. Smith's Fourteenth Amendment right to be free from excessive force; and

2. Whether discovery against Harris County, which cannot assert qualified immunity, should be stayed pending resolution of Defendant Haynes's Motion based on qualified immunity.

## IV. STANDARD OF REVIEW

A complaint may be dismissed under Rule 12(b)(6) if it fails "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (citation modified). A court must "take[] all facts pleaded in the complaint as true," *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009), and "construe facts in the light most favorable to the nonmoving party." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). To satisfy this standard, a complaint need only be "plausible"; it "need not contain detailed factual allegations." *Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011).

## V. SUMMARY OF ARGUMENT

The Court should deny Defendant Haynes's Motion to Dismiss. Ms. Smith has sufficiently stated plausible claims against Defendant Haynes for violation of her clearly established Fourteenth Amendment right to be free from excessive force. Ms. Smith has

alleged Defendant Haynes used excessive force that was objectively unreasonable and violated clearly established law, such that Defendant Haynes is not entitled to qualified immunity. Additionally, discovery against defendants who have not asserted, and cannot assert, qualified immunity should not be stayed based on Defendant Haynes's assertions of qualified immunity.

## VI. ARGUMENT

### A. Ms. Smith Has Plausibly Alleged That Defendant Haynes Violated Her Clearly Established Fourteenth Amendment Right (Count V).

The Court should deny Defendant Haynes's Motion under Rule 12(b)(6) because Defendant Haynes is not entitled to qualified immunity. In analyzing a qualified immunity defense, courts engage in a two-part inquiry, considering (1) whether the defendant committed an underlying constitutional violation, and (2) whether the law was clearly established at the time, such that a reasonable officer in the defendant's place would have known the action was unlawful. *See Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017); *see also Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "The purpose of this inquiry is to determine whether the officer had fair notice that [their] conduct was unlawful." *Crane v. City of Arlington*, 50 F.4th 453, 466 (5th Cir. 2022) (citation modified). The Fifth Circuit has made clear that a court "need not find the facts to be precisely the same as a previous case to hold that the [o]fficers would have had fair warning" under law. *Aguirre v. City of San Antonio*, 995 F.3d 395, 419 (5th Cir. 2021) (citation modified).

Defendant Haynes's Motion asserting qualified immunity should be denied on both prongs. First, Ms. Smith has plausibly alleged that Defendant Haynes's gratuitous

punching constituted objectively unreasonable excessive force in violation of the Fourteenth Amendment. Second, taking Ms. Smith's factual allegations as true, Defendant Haynes had fair notice that her conduct violated the Fourteenth Amendment. Defendant Haynes is therefore not entitled to qualified immunity.

   1. *Defendant Haynes is not entitled to qualified immunity because she excessively and unreasonably punched Ms. Smith.*

Defendant Haynes violated Ms. Smith's right to be free from excessive force under the Fourteenth Amendment through her gratuitous punching and other force. To prevail on a claim of excessive force in pretrial detention—alongside injury and causation—"a pretrial detainee must show only that the force purposely or knowingly used against [her] was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Defendants Lewis's and Rubio's "state of mind is not a matter that [Ms. Smith] is required to prove." *Id.* at 395. To guide the reasonableness inquiry, the Supreme Court has provided a nonexclusive list of factors to consider:

> [T]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* at 397 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Ms. Smith has sufficiently alleged Defendant Haynes violated the Fourteenth Amendment under this standard. In her Motion, Defendant Haynes does not, and cannot, dispute that she used force against Ms. Smith, *see, e.g.*, Dkt. 1, at 8–11 ¶¶ 30–38, or that Ms. Smith was injured as a result, *see, e.g., id.* at 13 ¶¶ 46–47; *id.* at 14–17 ¶¶ 52–63.

6

Instead, she only disputes whether the force used was excessive, or objectively unreasonable in violation of the Fourteenth Amendment. Dkt. 87, at 5–6 ¶¶ 5–7.

The *Kingsley* factors support Ms. Smith's allegations that Defendant Haynes intentionally used objectively unreasonable force. Standing at just five feet, three inches tall and weighing only 107 pounds, the unarmed Ms. Smith did not pose a threat or security issue to Defendant Haynes, or any other person, especially after she was on the floor, subdued by multiple guards, and curled into the fetal position to protect her head. Dkt. 1, at 5 ¶ 18; *id.* at 7 ¶¶ 27–29; *id.* at 10 ¶ 35.

Defendant Haynes at no time attempted to temper her force or the force of any other officer. Far from it—she entered the scene and immediately ran to punch Ms. Smith. *See id.* at 7 ¶ 29. Defendant Haynes proceeded to strike Ms. Smith at least 10 times, force her to the floor, drag her by her shirt, and slam her back into the floor, all while Ms. Smith was being controlled by multiple officers. *See id.* at 7–10 ¶¶ 29–36; *see also* Dkt. 1-1.

Defendant Haynes argues that "force was only used after Plaintiff became frustrated with Franco, referred to Franco's mother as 'a bitch,' and began to step towards Franco." Dkt. 87, at 5 ¶ 6. The Fifth Circuit has rejected similar arguments, recognizing that "passive resistance," including "exchang[ing] profanities with the officer," cannot justify "a sudden use of force." *Boyd v. McNamara*, 74 F.4th 662, 668 (5th Cir. 2023) (citation modified).

Moreover, the circumstances of the beginning of Defendant Franco's assault, when Defendant Haynes was not present, have no bearing on the objective reasonableness of Defendant Haynes's own excessive force. Rather than evaluate the situation, hold back, or attempt any de-escalation or tempering of force, Defendant Haynes immediately began

7

punching Ms. Smith upon entering the scene of the assault, and continued her force as more officers arrived and joined in. *See* Dkt. 1, at 7–9 ¶¶ 29–31; *see also* Dkt. 1-1.

Defendant Haynes's Motion does not address her continued, excessive force used after Ms. Smith was subdued on the floor. *See Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 335 (5th Cir. 2020) (stating that "[f]orce must be reduced once a suspect has been subdued," and pointing to "being pinned to the ground by multiple police officers" to illustrate being subdued, noting "handcuffs" are not required). She claims only that Ms. Smith "put[] herself in a position that made it difficult to handcuff her." Dkt. 87, at 6 ¶ 7. But whether or not she was handcuffed has no bearing on Defendant Haynes's objectively unreasonable force; Ms. Smith, at 107 pounds and only five feet, three inches tall, posed no threat to Defendants while being punched, slammed, dragged, and surrounded by between three and six other officers—particularly while she lay subdued in the fetal position, attempting to protect her head from their blows. *See* Dkt. 1, at 9–11 ¶¶ 32–36, 38. Defendant Haynes therefore used objectively unreasonable excessive force in her assault on Ms. Smith.

2. *Defendant Haynes had fair warning that her conduct violated Ms. Smith's constitutional right to be free from excessive force.*

Defendant Haynes had fair warning that her conduct was unconstitutional because Fifth Circuit precedent at the time of her assault clearly established that inflicting repeated punches in the head on an unresisting individual violates the Fourteenth Amendment. The Fifth Circuit's decision in *Boyd*, decided just two weeks after Defendant Haynes assaulted Ms. Smith, is instructive. 74 F.4th at 667. There, the Fifth Circuit rejected an assertion of

8

qualified immunity by a jail guard who tased a compliant plaintiff while handcuffing him. *Id.* at 667–71. The court concluded the law was clearly established that force was excessive even where the plaintiff had engaged in some degree of resistance—"jerking his hand away from [the guard], yelling in apparent pain, and turning his head"—because such "passive resistance" cannot "justif[y] the use of force." *Id.* at 668. In reaching this holding, the Fifth Circuit relied on three cases that were "sufficiently specific to put [the guard] on notice that his actions [in August 2019] . . . constituted unconstitutionally excessive force." *Id.* at 667. Each is relevant here.

First, in *Ramirez v. Martinez*, 716 F.3d 369 (5th Cir. 2013), the court held it was a "violation of clearly established law to tase the plaintiff even though the plaintiff pulled his arm from the officer's grasp, exchanged profanities with the officer, and questioned the officer's presence at his place of business." *Boyd*, 74 F.4th at 667. There, after the officer initially tased the plaintiff, "other officers joined in to help force the plaintiff to the ground and onto his stomach," and "tased him a second time." *Id.* Here too, after Defendant Franco initiated an exchange of profanities and punched Ms. Smith, Defendant Haynes joined in the assault, forcing Ms. Smith onto the floor and continuing to punch her in the head in violation of her clearly established right to be free from excessive force.

Second, in *Hanks v. Rogers*, 853 F.3d 738 (5th Cir. 2017), the Fifth Circuit held "that an officer violates clearly established law when he resorts to a sudden use of force on a plaintiff who is only passively resisting," *Boyd*, 74 F.4th at 668, and "abruptly resorts to overwhelming physical force rather than continuing verbal negotiations[.]" *Hanks*, 853 F.3d at 747. There, "passive resistance" consisted of the plaintiff taking "a small lateral

9

step with his left foot." *Id.* at 746. Here, Ms. Smith raised her arms to try to protect her head, first on her feet and then on the floor, where she curled into the fetal position surrounded by Defendant Haynes and other officers. *See* Dkt. 1, at 9 ¶ 33. Defendant Haynes did not attempt any verbal negotiations or any other form of de-escalation before or during the assault, instead immediately engaging in objectively unreasonable force.

Third, in *Trammel v. Fruge*, the Fifth Circuit considered a "visibly intoxicated plaintiff" who "told the officer that he was not going to jail and refused to obey the officer's command to place his arms behind his back." *Boyd*, 74 F.4th at 668. The plaintiff pulled his arm away from officers twice before they struck him with their fists and knees, tackling him to the ground. *Trammel*, 868 F.3d. at 342. The court held that, despite the plaintiff's failure to follow instructions, "the law at the time of [the] arrest clearly established that it was objectively unreasonable for several officers to tackle an individual who was not fleeing, not violent, not aggressive, and only resisted by pulling his arm away from an officer's grasp." *Id.* at 343. Similarly here, Defendant Haynes forced Ms. Smith to the ground, slammed and dragged her, and struck Ms. Smith repeatedly, violating her clearly established right to be free from excessive force.

Further, "[w]ithin the Fifth Circuit, the law has long been clearly established that an officer's continued use of force on a restrained and subdued subject is objectively unreasonable." *Fairchild v. Coryell County*, 40 F.4th 359, 368 (5th Cir. 2022) (quoting *Timpa v. Dillard*, 20 F.4th 1020, 1034 (5th Cir. 2021) (collecting cases and discussing Fifth Circuit precedent regarding excessiveness of continued force when used "on a restrained and subdued" person)). When Defendant Haynes entered the scene, two other officers were

10

already present, and Defendant Franco was repeatedly punching Ms. Smith's head. *See* Dkt. 1, at 7–8 ¶ 29. Even if Defendant Haynes's conduct was arguably permissible based on some misperception of the situation, which Ms. Smith does not concede, Defendant Haynes's continued assault on Ms. Smith, including while Ms. Smith was pinned on the floor, was undeniably unreasonable. *See id.* at 8–10 ¶¶ 31–35. Defendant Haynes's force when Ms. Smith was subdued and unresisting thus violated Ms. Smith's clearly established right to be free from excessive force.

The Fifth Circuit has repeatedly confirmed this rule against continued force on a subdued individual. For example, in *Cowart v. Erwin*, the court affirmed a denial of qualified immunity where jail officers ordered detainees, including the plaintiff, to kneel against a wall during a "shakedown" of a cell. 837 F.3d 444, 449 (5th Cir. 2016). After a verbal altercation during which the plaintiff disregarded the instruction to kneel, stood up, and then "mouthed off," two officers forced him back to his knees and restrained him while another punched him twice in the face. *Id.* at 449, 454. The court explained: "We have little difficulty concluding that in 2009, the time of the incident, it was well-established, in sufficiently similar situations, that officers may not use gratuitous force against a prisoner who has already been subdued . . . [or] incapacitated." *Id.* at 454 (citation modified); *see also, e.g.*, *Brown v. Lippard*, 472 F.3d 384, 386 (5th Cir. 2006) (denying qualified immunity where officers assaulted the plaintiff after a "brief exchange" of words, striking him "several times in his back, head and shoulders"). Defendant Haynes's gratuitous force against a subdued Ms. Smith thus violated clearly established law.

Similarly, in *Fairchild*, the Fifth Circuit reversed a grant of summary judgment to

11

jail officers who used excessive force on a detainee, leading to the detainee's death, after that detainee took the officer's handcuffs. 40 F.4th at 362. While the initial force in response to this active resistance did not violate clearly established law, the court found that the officers "continu[ing] to apply pressure to Page's neck, back, and legs for more than two minutes after she was subdued— . . . lying prone on her stomach with her hands handcuffed behind her back—would establish a violation of clearly established law." *Id.* at 368. Here too, Defendant Haynes continued dragging, slamming, and otherwise assaulting Ms. Smith when she was subdued on the ground, violating her clearly established right.

As these cases confirm, it was clearly established at the time Defendant Haynes assaulted Ms. Smith that the force she used was unconstitutionally excessive. Regardless of how the altercation began—which, as Ms. Smith has alleged and is thus required to be taken as true at this stage, was with Defendant Franco initiating a verbal confrontation and then punching Ms. Smith in the head—Defendant Haynes's force was never reasonable. Defendant Haynes personally struck Ms. Smith in the head at least 10 times, and dragged and slammed her on the floor, at least in part while Ms. Smith was subdued and surrounded by multiple officers. The unlawfulness of Defendant Haynes's continued force while Ms. Smith was subdued on the floor was clearly established at the time. Accordingly, Defendant Haynes had fair warning that her conduct was unlawful, and thus is not entitled to qualified immunity.

   3. *Defendant Haynes's cases in support of immunity are inapposite.*

Defendant Haynes's cited cases on qualified immunity are inapplicable. First, in

12

*Griggs v. Brewer*, 841 F.3d 308 (5th Cir. 2016), an officer punched "a drunken, actively resisting" plaintiff "several times" while attempting to restrain him, and punched the plaintiff one more time when he was handcuffed, after the plaintiff kicked the officer in the chest. 841 F.3d at 315.

Noting that the court there found "multiple" head punches were not excessive, Defendant Haynes claims incorrectly that Ms. Smith's conduct resembled the plaintiff's conduct in *Griggs*, and erroneously states that Ms. Smith "admits" to "conduct very similar to" the plaintiff there. *See* Dkt. 87, at 6 ¶ 7. The sole explanation Defendant Haynes provides for this claim is that Ms. Smith allegedly "put[] herself in a position that made it difficult to handcuff her." *Id.* But difficulty handcuffing a non-threatening individual does not excuse excessive force: As discussed above, *see supra* Section VI.A.1, using force against a subdued individual, including one not "handcuffed" but "being pinned to the ground by multiple police officers," is impermissible under the Constitution. *See Joseph*, 981 F.3d at 335. Moreover, the only "difficulty" that Defendant Haynes can cite was from Ms. Smith's attempts to protect her head from the barrage of blows as, fearing for her life, she curled herself into the fetal position and tried to shield her face—as Defendant Franco described, "holding her hands above her head and curling her feet into her body." Dkt. 1, at 12 ¶ 39. This submissive action neither resembles the conduct of the *Griggs* plaintiff, nor renders Defendant Haynes's excessive force any less unreasonable.

Further, Defendant Haynes's assault was factually distinguishable from the constitutional force used in *Griggs*, just as Ms. Smith's conduct was distinguishable from the plaintiff's conduct in *Griggs*. Unlike the *Griggs* plaintiff, Ms. Smith was not drunk and

13

posed no objective threat to Defendant Haynes. Moreover, in contrast to the single constitutional punch after the plaintiff in *Griggs* kicked an officer while restrained, or even the "multiple" punches before he was restrained, Defendant Haynes personally punched Ms. Smith at least 10 times, slammed her back into the floor, dragged her violently, and otherwise used force against her—even aside from the force inflicted by the other Defendants. *See* Dkt. 1, at 7–10 ¶¶ 29–35. Far from establishing that all punches to the head are constitutional, *Griggs* only provides a point of comparison to further emphasize the objective unreasonableness of Defendant Haynes's gratuitous force.

Defendant Haynes also cites *Darden v. City of Fort Worth*, 880 F.3d 722, 726, 732–33 (5th Cir. 2018), in which the Fifth Circuit found officers who used a taser and chokehold on a 340-pound person with asthma, causing a fatal heart attack, were not entitled to qualified immunity, and *Tiede v. Salazar*, 518 F. Supp. 3d 955, 972 (W.D. Tex. 2021), where the district court granted qualified immunity from claims arising out of a plaintiff being made to lie down in flooding sewage water and precluded from showering. These cases are entirely inapposite other than to illustrate that, under different circumstances, qualified immunity is denied in some cases where force is excessive and is granted in some cases where force is not excessive.

Finally, Defendant Haynes's assertion that the use of force is not categorically prohibited in jail, and may be used lawfully, is uncontroversial. *See* Dkt. 87, at 5 ¶ 5. Defendant Haynes's citations for this undisputed point cannot save her argument. First, *Kingsley* lowered the standard for people in pretrial detention to establish excessive force, and so provides no support to Defendant Haynes. 576 U.S. at 402. Second, *Baldwin v.*

14

*Stalder* is a clearly inapposite case addressing use of mace on incarcerated individuals who jumped on seats, spat at officers, and otherwise caused a disturbance while on a prison bus and refused to stop after three verbal warnings. 137 F.3d 836, 838 (5th Cir. 1998). That case says nothing about the objectively unreasonable force Defendant Haynes inflicted on a subdued Ms. Smith.

These cases aside, Ms. Smith has never claimed that force is always unlawful. She claims only that the excessive force Defendant Haynes and her fellow officers inflicted, while she posed no threat to the officers, including while she lay on the floor in the fetal position, was plainly unconstitutional. Defendant Haynes's actions were excessive and unreasonable and were thus unconstitutional under clearly established law. Accordingly, Defendant Haynes is not entitled to qualified immunity, and the Court should deny her Motion to Dismiss.

## B. The Court Should Not Stay Discovery on Municipal Liability.

The Court should allow discovery to proceed on Ms. Smith's municipal liability claims against Harris County pending resolution of Defendant Haynes's Motion invoking qualified immunity. While Ms. Smith does not contest that, under *Carswell v. Camp*, 54 F.4th 307 (5th Cir. 2022), discovery may be stayed against Defendant Haynes, the Court should still allow discovery to proceed against Defendant Harris County for municipal liability claims. *See Beltran v. City of Austin*, No. 1:22-CV-00015-LY, 2022 WL 11455897, at *3 (W.D. Tex. Oct. 19, 2022) (permitting deposition of city representative regarding city policies notwithstanding invocation of qualified immunity by individual defendants); *Howell v. Harris County*, No. 4:24-CV-468, 2024 WL 3647012, at *7 (S.D.

15

Tex. Aug. 1, 2024) (permitting discovery against Harris County notwithstanding grant of request to stay discovery against individual defendant pending resolution of qualified immunity issues).

## VII. CONCLUSION

For the foregoing reasons, the Court should deny Defendant Haynes's Motion to Dismiss.

DATED: October 28, 2025

Respectfully submitted,

*/s/ Molly Petchenik*
Molly Petchenik, *Attorney in Charge*
Texas Bar No. 24134321
Southern District No. 3854546
molly@texascivilrightsproject.org
Zachary Dolling
Texas Bar No. 24105809
Southern District No. 3290949
zachary@texascivilrightsproject.org
Travis Fife
Texas Bar No. 24126956
Southern District No. 3734502
travis@texascivilrightsproject.org
Kirsten Budwine
(*pro hac vice*)
Texas Bar No. 24140263
kirsten@texascivilrightsproject.org
TEXAS CIVIL RIGHTS PROJECT
P.O. Box 17757
Austin, TX 78760
Tel.: (512) 474-5073
Fax: (512) 474-0726

*/s/ Michael Murphy*
Michael Murphy
Texas Bar No. 24051098
Southern District No. 621098
mtmurphy@winston.com
Rachael Thompson
Texas Bar No. 24117139
Southern District No. 3640278
rthompson@winston.com
Matthew Frost
Texas Bar No. 24142920
Southern District No. 3923400
mfrost@winston.com
WINSTON & STRAWN LLP
800 Capitol Street
Suite 2400
Houston, TX 77002
Tel.: (713) 651-2600

Kristin McGough
Southern District Bar No. 3905172
kmcgough@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, D.C. 20036
Tel.: (202) 282-5000

**ATTORNEYS FOR
PLAINTIFF ANASIA SMITH**

## CERTIFICATE OF SERVICE

I certify that, pursuant to the Federal Rules of Civil Procedure, a true copy of the instrument to which this Certificate is attached was duly served upon each party to this cause on the CM/ECF system, which will automatically serve a Notice of Electronic Filing to the parties.

*/s/ Molly Petchenik*
Molly Petchenik

## CERTIFICATE OF WORD COUNT

Pursuant to Court Procedure 18(c), I certify that the word count of this Response is 4,393 words, excluding the portions permitted to be excluded under this Court's Procedures.

*/s/ Molly Petchenik*
Molly Petchenik

18